UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIDO OMAR,<br>Petitioner,<br>v.<br>TODD BLANCHE et al.,<br>Respondent. | CASE NO. 2:26-cv-04371-BAT<br>**ORDER GRANTING PETITION AND ORDERING RELEASE** |

Petitioner filed a § 2241 habeas petition requesting the Court order his release from immigration detention and prevent removal before he can present his asylum claim. The Court **GRANTS** the petition as follows.

Petitioner is a citizen of Iraq who graduated from the College of Idaho after entering the Country on a student visa. In 2024 he was convicted of simple battery, and completed his term of unsupervised probation. He has no other criminal convictions and has lived and worked in the community pending a decision on his application for asylum. In August 2026, Petitioner's lawyer Chris Chistensen told ICE Officer Jared Callahan that Petitioner would report to the ICE office as requested. Officer Callahan responded, "nothing in our local record indicates increased interest in Mr. Omar." However, on October 7, 2026, while Petitioner was leaving work, Respondents arrested and detained him in Idaho and then transported him to the Northwest ICE

Processing Center. An Immigration Judge (IJ) subsequently denied Petitioner's request for bond finding him a danger to the community, and Petitioner's appeal is still pending.

Petitioner argues he should be released because the IJ's denial of bond was arbitrary and capricious. Respondents oppose the petition arguing relief is barred under the abuse of the writ doctrine, the prior ruling Petitioner must exhaust his administrative remedies, and because the Court lacks jurisdiction to review the IJ's bond denial which Respondents contend was validly issued.

Respondents first argue the abuse of the writ doctrine bars relief because the Honorable David C. Nye, in *Omar v. Blanche*, No. 1:26-cv-00658-DCN, 2026 WL 3205974, (D. Idaho Oct. 26, 2026) denied Petitioner's first habeas petition. Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim. *Alaimalo v. U.S.* 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted).

The doctrine is inapplicable because Petitioner is not raising identical grounds for relief. Petitioner's first habeas petition alleged his initial detention violation his due process rights. As such, Judge Nye specifically addressed what process Petitioner was statutorily due upon his initial detention, and held Petitioner was statutorily entitled to a bond hearing at the outset of detention, found Petitioner had requested a bond hearing and a bond hearing was scheduled to occur in two days. Judge Nye held while exhaustion of remedies is not always required, the immigration scheme "contemplates discretionary bond determinations by immigration judges not federal district courts. What's more a bond hearing before an immigration judge may provide Omar with the same relief he seeks here and eliminate the need for habeas review." The Court

concluded "without some indication that Omar's rights have been or may will be violated, the Court cannot find a due process violation at this time."

Petitioner thus did not and could not raise the present claim of whether the IJ's denial of bond was unconstitutional because the bond hearing had not yet occurred. Respondents focus on Judge Nye's statement Petitioner may seek habeas relief "[i]f, after the administrative process concludes—including all appeals—Omar is still unsatisfied, he retains the ability to file suit." But this statement is followed by the statement that "this case, based on these facts, has concluded," and the facts before Judge Nye did not include a bond hearing or whether the IJ's determination was unconstitutional. The Court accordingly find the abuse of the writ doctrine does not bar habeas relief as Petitioner raises a claim that was not before Judge Nye and could not be raised earlier.

Respondents also argue the Court should deny relief because Judge Nye directed that Petitioner must exhaust his administrative remedies, and the denial of bond is still pending appeal. The Court rejects this interpretation of Judge Nye's decision. Judge Nye addressed the allegation whether Petitioner's rights were violated when he was initially detained and whether he should be immediately released. Because Petitioner's bond hearing was scheduled in two days, Judge Nye was confronted with the question of whether Petitioner should exhaust his right to bond hearing, or whether the Court should immediately release Petitioner. Under these circumstances, Judge Nye concluded the determination of Petitioner's detention and whether bond should be ordered should be made by the administrative process and not by the District Court, and Petitioner should exhaust his remedies. Judge Nye's decision, however, cannot be read to encompass all future challenges to agency decisions and to require exhaustion of administrative remedies to such decisions in all cases. Indeed, Judge Nye expressed concern

about issuing an order that "would in essence override the immigration judge." The Court accordingly finds Judge Nye's memorandum decision does not require administrative exhaustion to the claim presented, which was not before Judge Nye when he issued his earlier decision.

The Court further finds the exhaustion requirement is prudential for habeas claims, *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003)), and may be required when (1) agency expertise makes agency consideration necessary to create a record to reach a proper decision; (2) relaxation of the requirement would encourage deliberate bypass of administrative remedies; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Here, an administrative appellate record is unnecessary to resolve this habeas challenge; waiver of exhaustion will not encourage the deliberate bypass of the administrative scheme for future cases brought by Petitioner, the Court's ruling will resolve Petitioner's individual claim; and the agency's position on the present issue is already set, and recourse to administrative remedies would be futile. The Court accordingly waives prudential exhaustion.

Respondents also argue lacks jurisdiction to review discretionary bond decisions under 8 U.S.C. § 1226(e). However, § 1226(e) does not bar "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court. . ., we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Thus, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as

legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

The Court reviews the IJ's denial of bond for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under this standard, the Court cannot reweigh evidence and determines only if the correct legal standard was applied. *Id.* at 785 There are at least two ways to challenge whether the IJ applied the correct standard of proof. *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026). First, the IJ erred because the evidence itself as a matter of law cannot support the IJ's conclusion, and second the IJ's opinion itself clearly shows the IJ did not apply the correct standard to the facts. *Id.*

To determine if Petitioner is a danger to the community or risk of flight, the IJ should weigh nine factors. *See K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). These factors include:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 783–84.

Here, as the IJ did not issue issue a written opinion, the question is whether the evidence the IJ relied on at the bond hearing could, as a matter of law, establishes Petitioner is a danger.

*See e.g. W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (quotes omitted). The Court finds it could not.

The evidence presented at the bond hearing showed Petitioner lawfully entered the United States under a student visa and even though he had no formal duty to report to ICE, his lawyer contacted ICE in August 2026 and advised ICE that Petitioner would voluntarily report if requested. The ICE agent advised counsel ICE had no increased interest in Petitioner. Petitioner completed his state court probation, has no other criminal convictions and has lived and worked in the community and has applied for asylum. Upon being contacted by Petitioner's lawyer, ICE did not direct Petitioner to report or arrest him, indicating the agency did not view him to be a danger to the community. Petitioner was convicted in 2024 of misdemeanor battery in Idaho.

Petitioner contends the ALJ focused on his misdemeanor convictions and "admonished him for failing to provide police reports so she could assess Mr. Omar's dangerousness." Respondents argues "the immigration judge denied Petitioner's request for a change in custody status finding that Petitioner posed a danger to the community." *See* Declaration of Hubbard. This declaration fails to set forth the facts or rationale upon which the IJ relied in making this finding, but is a conclusory statement. Specifically, while the declaration set forth allegations about Petitioner's guilty pleas to misdemeanor offenses and the charged conduct, the declaration does not indicate the IJ had these facts before her in denying bond. To the contrary, Petitioner contends he was admonished for not providing the relevant police reports so the IJ could determine whether his conduct established he was a danger, or not.

The record thus indicates the IJ did not have the information Respondents now proffer in support of the bond denial. The record also does not indicate the IJ considered the *Guerra* factors such as the fact Petitioner has been crime free for two years since his 2024, the fact Petitioner

does not have any other criminal history and has been living and working in the community, or the fact Petitioner has also been working with an attorney to obtain asylum status and submitted evidence from four witnesses he is not a danger to the community. The record does not show the IJ considered this evidence.

The record does show the IJ issued a check-box order denying bond finding Petitioner was a danger to the community. The Court finds the IJ's denial of bond was arbitrary and capricious. It is evident the IJ focused upon Petitioner's 2024 misdemeanor battery convictions but provided no meaningful rationale that these convictions provided a reasoned basis to find, in view of all the *Guerra* factors that Petitioner is presently a danger to the community. Additionally, the IJ failed to provide any analysis whatsoever whether any conditions of release could address any danger to the community concerns.

The Court thus concludes the IJ abused her discretion in finding Petitioner is a danger to the community and no conditions of release could ensure the safety of the community, and finds Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no basis for continued detention, the Court concludes the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued

detention); *Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026), at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond). Accordingly, the Court **ORDERS** petitioner's immediate release from immigration detention.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall **RELEASE** petitioner with reasonable conditions within 24 hours of the date and time this Order is filed.

3. Respondents shall file a **CERTIFICATION** that petitioner has been released no later than 48 hours from the date and time this Order is filed.

4. Respondents shall not redetain Petitioner unless they first provide adequate written notice of the grounds and provide a hearing before a neutral decision maker at which time the government will bear the burden to prove Petitioner is a danger to the community or a risk of flight. Petitioner also requests the Court order Respondents not to remove him while his application for asylum is pending. The Court lacks the authority to be directly involved in Petitioner's removal and declines to grant this request. *See e.g. Jian Wang v. Wolf*, 511 F.Supp.3d 1060 (C.D. California 2021) (District Court lacks jurisdiction to review the Defendants' decision to not commence removal proceedings).

5. Petitioner also requested the Court order he not be transferred from this district to another. The Court construes Petitioner to request that he not be transferred during the pendency of this action, and not that he is barred from returning to Idaho where he was living at the time of his initial detention. Thus, upon Petitioner's release, the Court does not order that he continue to

remain or reside in this district.

6. Petitioner's counsel may move for EAJA fees and costs consistent with the law and the statute.

DATED this 25th day of November, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge